UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL JOSEPH PONICKI,<br><br>Petitioner,<br><br>v.<br><br>STATE OF MINNESOTA and CAL LUDEMAN, as Minnesota Commissioner of Department of Human Services,<br><br>Respondents. | Civil No. 10-4527 (SRN/TNL)<br><br>**REPORT**<br>**&**<br>**RECOMMENDATION** |

Michael Joseph Ponicki, 78550, 1111 Highway 73, Moose Lake, Minnesota 55767, pro se Petitioner;

Janice M. Allen, **ANOKA COUNTY ATTORNEY'S OFFICE**, 2100 3rd Avenue North, Anoka, Minnesota 55303-2265, for Respondent State of Minnesota; and

Steven H. Alpert, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, Saint Paul, Minnesota 55101-2128, for Respondent Cal Ludeman, as Minnesota Commissioner of Department of Human Services.

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Docket No. 1). The action has been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b).

For the reasons stated below, this Court **RECOMMENDS** that (1) the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Pet., Docket No. 1) be **DENIED**; (2) Petitioner's treatment claim be **DISMISSED WITHOUT PREJUDICE**; (3) All other claims be **DISMISSED WITH PREJUDICE**; and (4) the certificate of appealability be **DENIED**.

## II. BACKGROUND

Petitioner Michael Joseph Ponicki brings the present Petition challenging his indeterminate commitment as a sexually dangerous person ("SDP"). Petitioner appealed his commitment to the Minnesota Court of Appeals, arguing that (1) the "evidence does not support the conclusion that he is highly likely to reoffend and [(2)] the SDP Act is unconstitutional." *In re Civil Commitment of Ponicki*, A09-945, 2009 WL 3818390, at *1 (Minn. App. Nov. 17, 2009), *rev. denied* (Minn. Dec. 23, 2009). As for his constitutional claims, Petitioner argued that Minnesota's SDP act violates substantive due process; "violates his right to equal protection because it singles sexual offenders out from other criminals," *id.* at *4; the interpretation of the SDP act "requiring that, for SDP commitment, an individual be unable to 'adequately control' his sexual impulses, is void for vagueness," *id.*; the "SDP statute operates as a sentencing statute grafted onto the civil commitment process," *id.*; and "his SDP commitment proceeding violated his right to a jury trial," *id.* at *5. The Minnesota Court of Appeals affirmed Petitioner's commitment and rejected his constitutional claims. *Id.* at *1-5.

Petitioner subsequently petitioned for review by the Minnesota Supreme Court on two issues: "[w]hether unnecessary confinement of a sex offender civil committee

violates substantive due process when a less restrictive alternative is professionally assessed as appropriate" and "[w]hether the nature and duration of proposed unnecessary civil confinement of a sex offender violates substantive due process."  (Pet. for Review, Ex. 13, Docket No. 15.)  The Minnesota Supreme Court denied further review on December 23, 2009.  (Order, Dec. 23, 2009, Ex. 15, Docket No. 15.)

Petitioner now brings the present Petition against Respondents State of Minnesota ("State") and Cal Ludeman, as Minnesota Commissioner of Department of Human Services ("DHS").  Both the State and DHS oppose the Petition.  *See* Docket Nos. 9-14.

## III. ANALYSIS

### A. Standard of Review

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Habeas relief is available to a person civilly committed as an SDP if "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see Beaulieu v. Minn.*, 583 F.3d 570, 572 (8th Cir. 2009) (applying § 2254 to petition by civilly committed sexually dangerous person); *Linehan v. Milczark*, 315 F.3d 920, 924 (8th Cir. 2003) (same).

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") limits habeas review to state adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is considered "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "A federal court may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005) (internal quotes and citations omitted).

Significantly, a federal court will not entertain a petition for a writ of habeas corpus under § 2254 unless the petitioner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). "A district court must dismiss habeas petitions

containing both unexhausted and exhausted claims." *Rose v. Lundy*, 455 U.S. 509, 522 (1982).

B.     **Arguments before the Court**

Petitioner makes eight arguments in his Petition.[1] First, Petitioner argues that his due process rights were violated because he was committed to a "maximum security environment" rather than a "halfway house." (Pet. at 2, Docket No. 1.) Petitioner contends that this "maximum security environment" violates his constitutional right to have "the nature of the commitment bear[] some reasonable relationship to the purpose for which the individual is committed." (Pet. at 2-3.)

Second, Petitioner contends that the Minnesota Sex Offender Program ("MSOP") "is not providing sex offender specific treatment" and the focus of MSOP treatment is behavioral modification for anti-social behavior, which Petitioner maintains is inapplicable to him. (Pet. at 3.)

Third, Petitioner argues his due process rights were violated because his treatment and confinement are of an indeterminate duration, asserting that "[i]n over seventeen years, MSOP has not released a single person into the community." (Pet. at 3.)

Fourth, Petitioner argues that his constitutional rights were violated because the "[e]vidence as a whole does not substantially support the decision." (Pet. at 3.) Petitioner asserts that "[r]unaway speculation was used to trump all other evidence

---

[1] Petitioner submitted both initial and Amended Petitions. (*Compare* Pet. at 3 *with* Am. Pet. at 3, Docket No. 29.) On January 19, 2011, the Court received the amended Petition but, for reasons unknown, it was not docketed until March 4, 2011 (Am. Pet.), after Petitioner wrote a letter to the Court inquiring as to why the filing was not yet docketed, (Ltr. March 2, 2011, Docket No. 28). The Amended Petition is nearly identical to the initial Petition; Petitioner has only made one small non-substantive addition and one deletion, a deletion that arguably simplifies one of his claims. (Am. Pet. at 6 (redlined changes to Petition).) In the interests of justice, the Court has considered both the Petition and Amended Petition concurrently.

leading to commitment" and his "[p]rocedural due process rights were violated by allowing a showing of sexual dangerousness to be made by clear and convincing evidence, instead of by proof beyond a reasonable doubt." (Pet. at 3.) In the Amended Petition, Petitioner removed his procedural due-process claim concerning the applicable evidentiary burden, focusing only on the sufficiency of the evidence as a whole. (Am. Pet. at 3, 6.)

Fifth, Petitioner contends that he "has no mental illness or disorder" and "[h]e is not psychopathic." (Pet. at 3; *see also* Am. Pet. at 3.) Petitioner contends that his right to equal protection is violated because the "distinction between the sex offender and other criminal offenders is not 'genuine or substantial.'" (Pet. at 4.)

Sixth, Petitioner contends that the "vagueness of the statute permits the state to operate to reach any recidivist sex offender who cannot be detained as a psychopath." (Pet. at 4.)

Seventh, Petitioner contends that he "faces 'a potential life sentence'" and, therefore, his commitment "is punitive and constitutes double jeopardy." (Pet. at 4.)

Finally, Petitioner contends that "questions as to the risk of reoffending or other determinates presently left to the court and its examiners should become jury questions." (Pet. at 4.)

Respondents oppose the Petition, arguing that Petitioner has failed to exhaust his administrative remedies and that Petitioner cannot show the decisions of the state court were contrary to or an unreasonable application of federal law.

C.  **Treatment Claim**

Before proceeding to an analysis of Petitioner's claims, this Court must first address a jurisdictional matter. "Federal courts are courts of limited, not general, jurisdiction." *Clark v. Baka*, 593 F.3d 712, 714 (8th Cir. 2010) (quotation omitted). "As a court of limited jurisdiction, a federal court's first duty is to determine whether any matter is properly within its purview." *Willhite v. Collines*, No. 04-cv-4380 (JMR/RLE), 385 F. Supp. 2d 926, 928 (D. Minn. 2005).

Under § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added).

> The essence of habeas corpus is an attack by a person in custody upon the legality of that custody. If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy. It is the substance of the relief sought that counts. Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or length of his state custody, the district court lacks the power or subject matter jurisdiction to issue a writ.

*Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (citations omitted).

Petitioner's second claim is directed at the treatment (or lack thereof) DHS provides to individuals committed to MSOP. Petitioner asserts that "MSOP is not providing sex offender specific treatment," but a "one-size-fits-all solution with a focus on anti-social behavior. This does not fit the needs of the petitioner." (Pet. at 3.) Petitioner's treatment claim challenges a condition of his confinement, not the fact or

duration of his confinement. *Martin v. Benson*, No. 11-cv-347 (DSD/JJK), 2012 WL 863645, at * 1 (D. Minn. Feb. 23, 2012), *adopting report and recommendation*, 2012 WL 860315 (D. Minn. March 13, 2012); *see also Nicolaison v. Ludeman*, No. 7-cv-3224 (RHK/JJG), 2008 WL 508549, at *2. "State detainees are not entitled to a writ of habeas corpus effecting release from custody based on a conditions-of-confinement claim . . . ." *Martin*, 2012 WL 863645, at * 1 (noting proper remedy is a civil rights action "in which the Court could enjoin the unconstitutional conduct or issue a court order that ameliorates the unconstitutional condition or award damages").

Because Petitioner's treatment claim is not an attack on the fact or duration of his confinement, this Court recommends that this claim be dismissed without prejudice for want of subject matter jurisdiction. *See Kruger*, 77 F.3d at 1073.

### D. Procedural Default of Claims

Turning to Petitioner's remaining seven claims, only the less-restrictive-alternative-placement claim has been fully exhausted through one complete round of the state appellate review process. *See O'Sullivan*, 526 U.S. at 845 (habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

With respect to Petitioner's equal-protection, void-for-vagueness, double-jeopardy, and jury-trial claims, these claims were all presented to the Minnesota Court of Appeals, but not the Minnesota Supreme Court.[2] (Compare *In re Civil Commitment of*

---

[2] In his reply, Petitioner asserts that his petition for review to the Minnesota Supreme Court requested review of "the entire decision" of the Minnesota Court of Appeals, not "parts of the decisions . . . or only specific topics." (Am. Reply at 6, Docket No. 31.) Petitioner is correct that the petition for review "request[ed] that the Supreme Court

*Ponicki*, 2009 WL 3818390, *with* Pet. for Review.) Accordingly, these claims are deemed to be unexhausted because they have not been fairly presented in a *complete* round of the appellate process, *which includes the state's highest court. See O'Sullivan*, 526 U.S. at 845; *Fraction v. Minn.*, No. 07-cv- 3777 (DSD/JJG), 678 F. Supp. 2d 908, 916 (D. Minn. 2008) ("[A] prisoner must fairly present his federal constitutional claims to the *highest available state court*, (in Minnesota, the Minnesota Supreme Court), before seeking [habeas] relief in federal court."); *Williams v. Reiser*, No. 10-cv-2610 (PAM/FLN), 2011 WL 2437096, at *6 (D. Minn. May 25, 2011) (where petition for review is limited to certain claims, other claims raised and considered by state appellate court but for which review was not sought are unexhausted), *adopting report and recommendation*, 2011 WL 2416020 (D. Minn. June 16, 2011).

Petitioner's evidentiary claim is also unexhausted. Petitioner asserts that the evidence as a whole does not support his commitment, (Pet. at 3; Am. Pet. at 3), but, on appeal to the Minnesota Court of Appeals, Petitioner challenged only the trial court's finding that he was highly likely to reoffend. *Ponicki*, 2009 WL 3818390, at *1. Thus, to the extent Petitioner is now attempting to challenge the trial court's findings as to the remaining criteria for SDP commitment, whether he "engaged in a course of harmful

---

review the . . . decision of the Court of Appeals." (Pet. for Rev. at 1.) The petition goes on, however, to identify only two legal issues. (Pet. for Rev. at 1-2.) Under the Minnesota Rules of Civil Appellate Procedure, a petition for review must contain "a statement of the legal issues sought to be reviewed." Minn. R. Civ. App. P. 117, subd. 3(a). The Minnesota Supreme Court has described this requirement as "facilitat[ing] effective appellate review of the petition for review, provid[ing] notice to the respondent of the issues on which review might be granted, and provid[ing] the court with notice of the scope of the review requested." *Tatro v. Univ. of Minn.*, 816 N.W.2d 509, 515 (Minn. 2012) (quotation omitted). And while the Minnesota Supreme Court has "the discretion to consider additional issues, [it] generally will not address issues that were not specifically raised in the petition for review." *Id.* Therefore, this Court deems only those issues specifically identified as "legal issues sought to be reviewed" in the petition for review as claims presented to the Minnesota Supreme Court. *See* Minn. R. Civ. App. P. 117, subd. 3(a).

sexual conduct" and "manifested a sexual, personality, or other mental disorder or dysfunction," Minn. Stat. § 253B.02, subd. 18(a)(1), (2), these issues were not raised as part of the state appellate review process. Furthermore, Petitioner did not seek review of *any* evidentiary issues from the Minnesota Supreme Court. (Pet. for Review.)

Because these five claims have not been fairly presented in one complete round of the state appellate process, this Court must now determine whether the state procedural rules would allow a hearing on these unexhausted claims in a state court proceeding. *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). If the state's procedural rules would preclude a hearing on the merits, the petitioner has procedurally defaulted and is likewise procedurally barred from obtaining federal habeas relief, unless cause and prejudice, or fundamental miscarriage of justice, can be demonstrated. *Id.* at 758.

"Individuals who have been civilly committed as SDPs . . . in Minnesota have two distinct state court remedies: (1) direct appeal of their commitment to the Minnesota Court of Appeals and (2) a petition in state courts for a writ of habeas corpus."[3] *Navratil v. Jesson*, No. 12-cv-01533 (JNE/SER), 2012 WL 5439179, at * 3 (D. Minn. Oct. 4, 2012), *adopting report and recommendation*, 2012 WL 5430982 (D. Minn. Nov. 7, 2012). While civilly committed individuals may raise constitutional claims in state habeas proceedings, they "are not entitled to obtain review of an issue previously raised." *Joelson v. O'Keefe*, 594 N.W.2d 905, 908 (Minn. App. 1999); *see also Navratil*, 2012

---

[3] As of the briefing of this matter, Petitioner has not sought state habeas review or petitioned for a reduction in custody pursuant to Minn. Stat. § 253B.185, subd. 9, which allows a civilly committed individual to petition for "transfer out of a secure treatment facility, a provisional, or a discharge from commitment." (DHS Am. Mem. of Law at 7 n.5; *see also* State Mem. at 15.)

WL 5439179, at * 3 (same); *McDeid v. Mooney*, No. A04-36, 2004 WL 728133, at *2 (Minn. App. Apr. 6, 2004) (same), *review denied* (Minn. May 26, 2004).

Petitioner clearly knew of these five claims at the time of his direct appeal—he argued them (or, in the case of the evidentiary claim, a variant thereof) before the Minnesota Court of Appeals, but then chose not to seek further review from the Minnesota Supreme Court. Petitioner is precluded from seeking state habeas relief on *these claims* because they were previously raised in his direct appeal. Accordingly, these claims are procedurally defaulted.

"To overcome the procedural default, [a habeas petitioner] must show cause for not presenting the claim on post-conviction appeal, and prejudice from the failure, or a fundamental miscarriage of justice—meaning that he is actually innocent." *Storey v. Roper*, 603 F.3d 507, 523 (8th Cir. 2010) (citing *Schlup v. Delo*, 513 U.S. 298, 324-27 (1995); *Coleman v. Thompson*, 501 U.S. 722, 748, 750 (1991)). "If a petitioner is unable to show cause and prejudice, or a miscarriage of justice, the procedural default cannot be excused, and the court will deny the petition without addressing the merits of the claim." *Fraction*, 678 F. Supp. 2d at 918. Petitioner has shown neither cause and prejudice for his default, nor that a fundamental miscarriage of justice would occur absent this Court's consideration of these claims. Therefore, the Court recommends that these claims be dismissed with prejudice.

### E. Less Restrictive Alternative

As for Petitioner's remaining claim, Petitioner claims that that his substantive due process rights under the Fourteenth Amendment were violated because he has been

placed in "the most restrictive environment" despite the court-appointed examiners' support of halfway-house placement. (Pet. at 2.) Petitioner contends that the fact that "no halfway house was available for an extended stay . . . was not a sufficient reason to avoid community placement." (Pet. at 2.) Petitioner likewise asserts that his commitment "to a maximum-security facility was out of convenience and not out of a need." (Am. Reply at 15.)

The State responds that it has no obligation "to make a less restrict alternative available to a person who has been found to be a[n SDP]." (State Mem. at 24, Docket No. 14.) Further, the State points out that, under Minnesota law, "[t]he [trial] court can only consider a less restrictive alternative if the person establishes by clear and convincing evidence that a less restrictive program is available that is *consistent with the person's treatment needs and the requirements of public safety*." (State Mem. at 24 (emphasis added) (citing Minn. Stat. § 253B.185, subd. 1(d).)

When addressing Petitioner's substantive due-process argument, the Minnesota Court of Appeals observed that there were no alternative treatment options for Petitioner. *Ponicki*, 2009 WL 3818390 at *3. Applying state law, the Minnesota Court of Appeals held that "even if there were an alternative option, [Petitioner] has no right to placement in it." *Id.* (citing *In re Senty-Haugen*, 583 N.W.2d 266, 269 (Minn. 1998); *In re Kindschy*, 634 N.W.2d 723, 731 (Minn. App. 2001), *review denied* (Minn. Dec. 19, 2001)).

Petitioner is essentially arguing that the trial court made an unreasonable determination of the facts before it when concluding that there was no less restrictive

alternative placement for Petitioner other than civil commitment. "A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Id.* (citing 28 U.S.C. § 2254(d)(2)). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). "Even if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." *Id.* (quotation omitted).

There is no dispute that the court-appointed examiners "support[ed Petitioner's] completion of sex offender treatment under a stay of commitment in an outpatient sex offender treatment program, but *only if criteria set out in their reports and testimony were met*." (Findings of Fact, Conclusions of Law & Ord. Sept. 14, 2008, at 11 (emphasis added), Ex. 8, Docket No. 15; *see also* Pet. at 2.) This criteria included "guaranteed placement at a structured residential program that *would monitor [Petitioner's] comings and goings*, and maintain a reasonable treatment milieu, where [Petitioner] would *reside for the entire period of time that he would be engaged in outpatient treatment*, a period that would likely be up to two years in duration." (Findings of Fact, Conclusions of Law & Ord. Sept. 14, 2008, at 11-12 (emphasis

added).) The trial court found, however, that only MSOP could satisfy both Petitioner's treatment needs and protect public safety. (*Id.* at 13.)

The trial court began by noting that the only residential sex offender treatment programs in Minnesota were MSOP, which required civil commitment; correctional facility programs, available only to incarcerated individuals and limited to length of incarceration; and Alpha House, which did not accept individuals subject to SDP petitions. (*Id.* at 12.) Petitioner is not incarcerated and is subject to an SDP petition. Petitioner did not and has not identified another residential sex offender treatment program.

The trial court went on to consider other placement options, including intensive supervised release, correctional halfway houses, GPS monitoring, a board-and-lodge facility, and combinations thereof. (*Id.* at 11-12.) But the trial court found each of these options, when considered individually or combined, was crucially deficient. Intensive supervised release lacked a supervised residential component. (*Id.* at 12.) Correctional halfway houses typically were limited to 60-day placements and, while extensions were available, "there is no history of a correctional halfway house ever agreeing to accept an offender for the period it would take [Petitioner] to complete treatment." (*Id.*) GPS monitoring would not provide same-time, location-specific data, only approximations of Petitioner's location. (*Id.*) The board-and-lodge facility had minimal staffing, no required schedule, and no monitoring of Petitioner's comings and goings. (*Id.*) In addition, this facility was located in a residential area, had two playgrounds located within a five-block radius, and permitted residents to be absent for up to 14 days without

explanation. (*Id.*) Petitioner did not and has not identified another placement option that would satisfy the criteria identified by the court-appointed examiners.

To warrant federal habeas relief, Petitioner must do more than show that a different conclusion could have been reached on the facts before the trial court. *See Wood*, 130 S. Ct. at 849. Petitioner must show that trial court's decision was objectively unreasonable. *See id.* "Although freedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action,' that liberty interest is not absolute." *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). MSOP was the only identified program that was capable of providing Petitioner with both treatment and sufficient monitoring at a residential facility. Petitioner has not shown that the trial court's decision to commit Petitioner to MSOP was objectively unreasonable given the available programs, Petitioner's treatment needs, and the concern for public safety.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11 Governing Section 2254 Cases in the United States District Court requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Petitioner has failed to make such a substantial showing. Therefore, with respect to the issues

addressed in this report and recommendation, this Court recommends that the certificate of appealability pursuant to 28 U.S.C. § 2253(c)(3) be denied.

## V. RECOMMENDATION

Based upon the record and memoranda, **IT IS HEREBY RECOMMENDED** as follows:

1. Petition for Writ of Habeas Corpus (Docket No. 1) be **DENIED**;

2. Petitioner's treatment claim be **DISMISSED WITHOUT PREJUDICE**;

3. All other claims be **DISMISSED WITH PREJUDICE**; and

4. The certificate of appealability be **DENIED**.


Dated: January  22  , 2013

                                        *s/ Tony N. Leung*
Magistrate Judge Tony N. Leung
United States District Court
for the District of Minnesota

*Ponicki v. Minnesota et al.*
CIVIL NO. 10-4527 (SRN/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **February 6, 2013**.